J-S49032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.O. AND T.A., MINORS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.C.B. | No. 601 MDA 2015 |

Appeal from the Orders entered March 10, 2015,
in the Court of Common Pleas of Cumberland County, Juvenile
Division, at No(s): CP-21-DP-0000107-2012,
CP-21-DP-0000178-2013

BEFORE: BENDER, P.J.E., ALLEN, and OLSON, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 28, 2015**

E.C.B. ("Mother") appeals from the orders dated March 3, 2015, and entered on March 10, 2015, in the Court of Common Pleas of Cumberland County, which granted the petition filed by the Cumberland County Children and Youth Services ("CYS" or "Agency") seeking to change the permanency goals for her minor children, S.O., a female born in January of 2011, and T.A., a male born in April of 2013, (collectively, the "Children"), pursuant to section 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351, and directed CYS not to provide Mother any further visitation with the Children.[1]  Mother also appeals from the orders entered by the Juvenile Court Division directing CYS not to provide any further visitation between Mother and the Children and

---

[1] S.O.'s father, J.W., voluntarily relinquished his parental rights.  T.A.'s father, J.A., is deceased.  **See** Trial Court Opinion, 5/7/15, at 1 n.1.

denying her motion to direct CYS to continue visits between her and the Children pending appeal. We affirm.

We adopt the factual background and procedural history as set forth in our memorandum at docket numbers 586 MDA 2015 and 587 MDA 2015.

On April 2, 2015, Mother filed concise statements of errors complained of on appeal along with her notices of appeal in Juvenile Court Division, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On April 16, 2015, this Court listed the appeal from the goal change/visitation orders at docket number 601 MDA 2015, to be decided consecutively to Mother's appeals from the termination/visitation orders, docket numbers 586 MDA 2015 and 587 MDA 2015.

In her brief on appeal from the orders changing the Children's permanency goal and denying visitation pending appeal, Mother raises identical issues to those raised in her concise statement in the termination appeals, but substitutes the concepts of change of goal, as follows:

> 1. Was the [t]rial [c]ourt's decision to change the goal for the four and one year old children to adoption supported by competent evidence where [] Mother's minimum incarceration term is up on April 1, 2016[,] and where [] Mother has cooperated in every way with [CYS], has forwarded significant monthly child support payments to the foster parents and has the financial means to continue doing so until her release, has routinely mailed letters and pictures and gifts to the [C]hildren, has shown a willingness to participate in every prison program available to improve herself, has the ability to communicate with the [C]hildren via virtual visitation and by telephone while in prison, has continued to maintain an ideal home for her children to move into immediately upon her release from prison, and[,] where the foster parents who are her sister and brother-in-law[,]

are willing to care for the [C]hildren until her release[,] whether or not her parental rights are terminated, and where there was no clear and convincing evidence presented that [] Mother cannot successfully resume parenting the [C]hildren immediately upon her release[?]

2. Was the [t]rial [c]ourt's decision that a goal change to adoption best serves the needs of the [C]hildren at issue supported by competent evidence based upon the above facts among others established on the record?

3. Did the [t]rial [c]ourt abuse its discretion and err as a matter of law in changing the goal to adoption where [CYS] failed to provide [] Mother with reasonable efforts to promote reunification between her and her daughter[,] S.O.[,] prior to filing its termination petition?

[4.] Did the [t]rial [c]ourt abuse its discretion and err as a matter of law in admitting and considering as part of its decision to terminate the parental rights of [] Mother, over objection set forth in the record, Glenford Kaufman's opinion testimony[?]

[5.] Did the [t]rial [c]ourt abuse its discretion and err as a matter of law in admitting and considering as part of its decision to terminate the parental rights of [] Mother, over objection set forth in the record, reports prepared by the Court Appointed Special Advocate Kathleen Kelly[?]

[6.] Did the [t]rial [c]ourt abuse its discretion and err as a matter of law in admitting and considering as part of its decision to terminate the parental rights of [] Mother, over objection set forth in the record, the opinion of Kathleen Kelly on the question of whether or not [] Mother's parental rights should have been terminated in favor or adoption?

7. Did the [t]rial [c]ourt abuse its discretion and err as a matter of law in denying further visits between [] Mother and her children pending appellate review of the [t]rial [c]ourt's orders terminating [] Mother's parental rights?

Mother's Brief at 10-11.

First, we will address Mother's issues 1 and 2, which Mother discusses together in her brief. *See* Mother's Brief at 37-38. Mother argues that there was insufficient evidence to support the trial court's order changing the permanency goal for the Children to adoption because she has been cooperative with CYS staff, and has maintained communication with CYS workers from prison. Mother alleges that she has agreed to do everything needed to provide the Children with permanency when she is released from prison. *See* Mother's Brief at 37-38.

Our Supreme Court set forth our standard of review for dependency cases as follows.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

In a change of goal proceeding, the best interests of the child, and not the interests of the parent, must guide the trial court, and the parent's rights are secondary. *In re A.K.*, 936 A.2d 528, 532-533 (Pa. Super. 2007). The burden is on the Agency to prove the change in goal would be in the child's best interests. *In the Interest of M.B.*, 674 A.2d 702, 704 (Pa. Super. 1996). In contrast, in a termination of parental rights proceeding, the focus is on the conduct of the parents under 23 Pa.C.S.A. § 2511. *In re M.B.*, 674 A.2d at 705.

- 4 -

With regard to a dependent child, in *In re D.A.*, 801 A.2d 614 (Pa.

Super. 2002) (*en banc*), this Court explained:

> [A] court is empowered by 42 Pa.C.S.A. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S.A. § 6351(a).

*Id.* at 617.

Regarding the disposition of a dependent child, sections 6351(e), (f), (f.1), and (g) of the Juvenile Act provide the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection and physical, mental and moral welfare of the child.

This Court has stated:

> [T]he focus of all dependency proceedings, including change of goal proceedings, must be on the safety, permanency, and well-being of the child. The best interests of the child take precedence over all other considerations, including the conduct and the rights of the parent. . . . [W]hile parental progress toward completion of a permanency plan is an important factor, it is not to be elevated to determinative status, to the exclusion of all other factors.

*In re A.K.*, 936 A.2d at 534. In *In re N.C.*, 909 A.2d 818, 823 (Pa. Super.

2006), another goal change case, the trial court granted a goal change to

adoption despite the fact that the mother had made substantial progress toward completing her permanency plan. This Court held that the mother's parenting skills and judgment regarding her children's emotional well-being remained problematic.

Here, the trial court found that CYS made reasonable efforts to provide Mother with services to promote reunification. Trial Court Opinion, 5/7/15, at 9. The trial court found that CYS developed an appropriate plan, and did what it could to assist Mother in obtaining the recommended services, but, because of her incarceration, the available services were limited. *Id.* at 9. The trial court also found that there is no service available to remove the most significant impediment to the Children's reunification with Mother, *i.e.*, her incarceration. *Id.*

Further, the trial court found that, based on the totality of the circumstances, the needs and welfare of the Children would best be served by allowing them to be adopted by their foster parents, so that they can have the permanency that they need and to which they are entitled. The trial court stated that the Children are in a safe, secure, and loving environment with their foster parents, who meet all of their physical and emotional needs. *Id.* at 8. The trial court found from the testimony that T.A. is thriving, and S.O. has made great progress in overcoming the trauma to which she has been subjected. *Id.*

CYS presented ample testimony from which the trial court properly concluded that the disposition that is best suited to the safety, protection and physical, mental and moral welfare of the child was to change the Children's permanency goal to a sole goal of adoption. Mother will be unavailable to parent the Children until her release from prison, which will not be until April of 2016, at a minimum.

The remainder of Mother's issues duplicate the arguments that she raises in her appeals in relation to the termination decrees and orders, and the orders denying any visitation between her and the Children. We incorporate our discussion and disposition of those issues from our memorandum at docket numbers 586 MDA 2015 and 587 MDA 2015.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/2015